# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                                                                No. 1:03-cr-568-WJ-3

**GABRIEL DAVID GOMEZ**,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR A SENTENCE REDUCTION

**THIS MATTER** comes before the Court upon Defendant Gabriel Gomez's "Motion for a Reduction of Sentence" **[Doc. 733]** seeking compassionate release. The United States filed a Response **[Doc. 739]**. The United States opposes the requested relief. Having reviewed the parties' briefing and the applicable law, the Court **DENIES** Gomez's motion for a compassionate release.[1] His concomitant request for a reduction in supervised release from five years to one year is also **DENIED**.

---

[1] Defendant's counsel had requested a hearing on the Motion for a Reduction of Sentence. On December 23, 2025, the Court set a hearing for February 13, 2026. **[Doc. 749]**. The Court also entered an amended notice of hearing on January 13, 2026, setting additional matters to be heard at the same time as the original notice. **[Doc. 751]**. Defendant's counsel then filed a request to vacate the hearing on January 19, 2026, and provided the Court with a limited number of dates when counsel indicated he would be available. **[Doc. 753]**. Unfortunately, over the past twelve months, the Court's criminal and habeas corpus caseload arising out of immigration and border issues has increased exponentially, leaving no time available on the dates counsel had indicated he would be able to attend. After review of the record, the Court has determined that a hearing is unnecessary to decide the Motion and, therefore, issues this Memorandum Opinion on the written record.

**BACKGROUND**

Gabriel David Gomez was indicted by a Grand Jury on March 25, 2003, on one count of conspiracy to distribute 1000 kilograms or more of a substance containing a detectable amount of marijuana and 52 counts of money laundering. **[1:03-cr-00568-WJ ("CR") Doc. 1]**. The forfeiture count of the Indictment, Count 68, sought forfeiture of $15,657,670.00. Gomez was one of several co-defendants in the proceeding. A few days before jury selection was to commence in Gomez's jury trial, he pled guilty to all counts without the benefit of a plea agreement. **[CR Doc. 343]**. At the time of sentencing, his offense level was 44 and his Criminal History Category was III, resulting in a guideline range of life imprisonment. **[CR Doc. 745 at 1; CR Doc. 745-1]**. Gomez was sentenced to 360 months on Count 1 (distribution), 240 months as to each of Counts 2-24 (money laundering), and 120 months as to each of Counts 30-54 (money laundering), to run concurrently for a total term of incarceration of 360 months. He was also sentenced to a total term of supervised release of 5 years. The Judgment and Commitment Order was entered on May 24, 2005. **[CR Doc 500]**.

Mr. Gomez was sentenced on May 24, 2005. **[CR Doc 500]**. The now-foundational decision in *United States v. Booker*, 543 U.S. 220 (2005), had been handed down by the United States Supreme Court on January 12, 2005. *Booker* held that the United States Sentencing Guidelines should not be treated as mandatory in sentencing proceedings, changing the legal landscape in sentencing. Given the short time between *Booker* and Mr. Gomez's sentencing, there was very little guidance from case law on how to apply this change in the law. Accordingly, the Court varied downward from a low-end guideline sentence of life and imposed a 30-year custody sentence.

Gomez appealed to the United States Court of Appeals for the Tenth Circuit on May 25, 2005. **[CR Doc. 503]**. The conviction and sentence were affirmed in full by the Tenth Circuit on January 8, 2007. **[CR Doc. 565]**. On appeal, Mr. Gomez challenged the Court's application of *Booker,* arguing that the Court treated the Guidelines as mandatory. However, the Tenth Circuit concluded that "the District Court's conduct, as well as its words, demonstrates that the Court did not treat the Guidelines as mandatory." **[CR Doc. 565].** The Gomez sentencing may very well have been the undersigned Judge's first downward variance from the Sentencing Guidelines.

In affirming, the Tenth Circuit noted that in an evidentiary hearing prior to sentencing, the government presented evidence that, at Gomez's direction, more than 40,000 pounds of marijuana had been transported from Mexico and distributed throughout the United States, that Gomez possessed a firearm, obstructed justice by intimidating a witness, and led a criminal enterprise of more than five people. **[CR Doc. 565 at 3]**. The Tenth Circuit also noted that the U.S. Sentencing Guidelines provided for a life sentence in Gomez's case, but, treating the Guidelines as advisory rather than mandatory, and after considering the sentencing factors of 18 U.S.C. § 3553(a), this Court had determined that a life sentence would be unfair to Gomez. **[CR Doc. 565 at 4]**.

Over five and a half years elapsed before Gomez filed a *pro se* motion to vacate, set aside, or modify conviction or sentence under 28 U.S.C. § 2255 on March 25, 2013. **[CR Doc.653]**. Consistent with statutes, rules, and case precedent, the Court treated the § 2255 proceeding as a civil habeas corpus proceeding and opened *Gabriel David Garcia v. United States,* **No. 2:13-cv-00287-WJ-ACT ("CV") [CV Doc. 1]**. Also consistent with policy at the time, the Court "dual docketed" 2255 filings in both the civil and criminal cases. The 2255 proceeding was referred, first, to Magistrate Judge Torgerson and after reassignment, to Magistrate Judge Vidmar. **[CV Doc. 4, 28].** From there, another five years of highly contested, adversarial proceedings that

3

included two interlocutory appeals to the Tenth Circuit, one petition for writ of mandamus to the Tenth Circuit, a motion to dismiss the proceedings, and two motions to disqualify the judges and/or transfer the case transpired. **[CV Doc. 30, 43, 48, 52; CR Doc. 667, 669, 691, 696, 700]**.

Around the time of the first motion to disqualify, Gomez began a pattern of telephone calls to the Clerk's Office and Chambers. The Court entered an Order prohibiting Gomez from making telephonic inquiries and directing him to submit any requests he had for information in writing. **[CV Doc. 44; CR Doc. 692]**. The interlocutory appeals were dismissed by the Tenth Circuit for lack of jurisdiction and the petition for mandamus was denied. **[CV Doc. 33, 53, 55, CR Doc. 679, 699, 701].**

Magistrate Judge Vidmar issued his Proposed Findings and Recommended Disposition (PFRD) in the 2255 proceeding. The PFRD recommended (i) denial of the § 2255 motion on the grounds that it was untimely and barred by the applicable statute of limitations and (ii) dismissal of the proceeding with prejudice. **[CV Doc. 58; CR Doc.706].** Defendant Gomez filed objections to the PFRD. **[CV Doc. 62; CR Doc. 710].**[2] The Court then overruled Defendant's objections, adopted the PFRD, and dismissed the § 2255 motion based on the bar of the statute of limitations. **[CV Doc. 68; CR Doc. 716].** By a separate Order entered August 14, 2025, **[CV Doc. 69]**, the Court also denied a Certificate of Appealability. 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2255 Proceedings.

Although permitted to do so by law, Defendant Gomez never filed a request for a Certificate of Appealability in the Tenth Circuit, nor did he attempt to file any appeal from the Court's dismissal of his § 2255 motion on statute of limitations grounds. Instead, on August 18,

---

[2] Defendant Gomez actually filed a *pro se* Motion to Strike Government's Filings and Vacate Magistrate Judge's Order and Proposed Recommendation, which the Court construed as objections to the PFRD.

2015, Mr. Gomez filed a motion to stay the § 2255 proceedings.  **[CV Doc. 71; CR Doc. 719].** Specifically, Defendant requested a stay of 140 days so that he could (1) file a motion to disqualify all of the judges for the District of New Mexico and the Tenth Circuit Court of Appeals and also to transfer the proceedings elsewhere; (2) make a formal complaint to the Judicial Council of the Tenth Circuit for the circuit judges' alleged misconduct; (3) make a formal complaint to the House Judiciary Committee and Office of General Counsel for the Administrative Office of the Courts; and (4) file a motion to "recall and vacate" the Tenth Circuit's orders on his appeals and petition for writ of mandamus. **[CV Doc. 71; CR Doc. 719].**

The Magistrate Judge denied Defendant's Motion to Stay, *nunc pro tunc,* on August 19, 2015. **[CV Doc. 74; CR Doc. 720].**  The record does not indicate that Defendant ever carried through with any of the filings or complaints identified in his motion to stay.  Instead, some five years later in 2020, several attorneys entered appearances on Gomez's behalf.  **[CR Doc. 721, 722, 723, 724, 725].**  However, no further filings were made in this Court by Defendant Gomez until the counseled filings of his motion to disqualify the judge and his motion for compassionate release in 2025.  **[CR Doc. 731, 733].**

At the Court's request, the United States Probation Office calculated Defendant's sentencing range under the current sentencing guidelines.  The calculations show an offense level of 42, a Criminal History Category of III, and a sentencing guidelines range of 360 months to life. **[CR Doc. 745 at 1-2]**.  Therefore, Defendant's 2004 sentence of 30 years would still be at the low end of the guidelines range.  In addition, the record reflects that on December 24, 2024, Gomez was released from incarceration and transferred to the Diersen Charities Residential Reentry Center (RRC) in Albuquerque. **[Doc. 733].** Defendant was transferred from BOP custody to a residential reentry center in order to serve the remainder of his term, but on July 30, 2025, while at

the residential reentry center, he tested positive for Spice and was returned to BOP custody.  **[CR Doc. 745 at 2]**.

## DISCUSSION

### I. Sentence Modification (Generally)

After a judgment of conviction is entered, a district court's authority to modify a sentence is limited to specific statutory authorization. *See United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997); *United States v. McGee*, 615 F.3d 1287, 1290 (10th Cir. 2010) (quoting § 3582(c)); *United States v. Mannie*, 971 F.3d 1145, 1148 (10th Cir. 2020). Nevertheless, § 3582 allows a court to reduce a defendant's sentence in a few situations, including where circumstances exist warranting compassionate release.

### II. Compassionate Release Standard

Relevant here is subsection (c)(1)(A), called "compassionate release." *United States v. Hemmelgarn*, 15 F.4th 1027, 1029 (10th Cir. 2021) (citing *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021)). Under § 3582(c)(1)(A), a court may reduce a term of imprisonment if "after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024). Thus, the statute creates a "three-step test." *Id.* A district court must (1) "find whether extraordinary and compelling reasons warrant a sentence reduction"; (2) "find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "consider any applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id.*

(quoting *United States v. Hald*, 8 F.4th 932, 937–38 (10th Cir. 2021) (quoting *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021))).

There's an antecedent step, too. A defendant seeking compassionate release must satisfy § 3582's administrative exhaustion requirement. Although exhaustion is a requirement, it is not jurisdictional—rather, it is a claim-processing rule. *Hemmelgarn*, 15 F.4th at 1031. If (or when) the United States invokes this claim-processing rule, a district court must enforce it. *United States v. Gieswein*, 2022 U.S. App. LEXIS 20096, at *4 n.2 (10th Cir. July 21, 2022) (unpublished) (citing *Hemmelgarn*, 15 F.4th at 1030–31).

Granting a motion for compassionate release requires the district court to address each step, *see Hald*, 8 F.4th at 938, whereas a court "may deny compassionate-release motions when any of the three prerequisites . . . is lacking [without] address[ing] the others." *McGee*, 992 F.3d at 1043 (citation omitted). Prior to granting compassionate release, a district court must:

- Review for administrative exhaustion;

- Determine if extraordinary and compelling reasons exist;

- Determine if a sentence reduction is consistent with applicable policy statements; and

- Consider and weigh the § 3553(a) sentencing factors.

*United States v. Vega-Figueroa*, 139 F.4th 77, 80 (1st Cir. 2025) (explaining the "statutory framework governing compassionate release"); *United States v. Chen*, 48 F.4th 1092, 1094–95 (9th Cir. 2022) (listing the "four conditions" for granting compassionate release); *see also United States v. Birch*, 2023 U.S. App. LEXIS 25261, at *2 (10th Cir. Sept. 25, 2023) (unpublished).

### III. Gomez's Compassionate Release Request

Gomez served "over 22 years on a sentence of 30 years for a marijuana distribution offense [as well as fifty-three counts of money laundering under 18 U.S.C. §§ 1956 and 1957]." **[CR Doc.**

**733 at 1]**. And on December 24, 2024, Gomez was "released from incarceration and transferred to the Diersen Charities Residential Reentry Center (RRC) in Albuquerque." *Id.* However, within about six months, Defendant Gomez tested positive for the illegal substance, Spice, and his release to the residential reentry center was revoked.  **[CR Doc. 745]**.

As grounds for his compassionate release, Gomez cites to the Sentencing Commission's policy statement regarding: (1) unusually long and disproportionate sentences, (2) sexual abuse, (3) physical abuse, (4) medical conditions, and (5) rehabilitation. **[CR Doc. 733 at 2–4]**.

### A. Exhaustion of administrative rights

In his motion, Gomez provided the compassionate release filing he sent to the director of the residential reentry center **[CR Doc. 733-13 at 2–37]**. This request was denied on June 23, 2025 **[Doc. 733-15 at 2–3]**. More than thirty days have elapsed since Gomez's request to the director, as required. *See* 18 U.S.C. § 3582(c)(1)(A).

Acknowledging that exhaustion is a requirement, the United States does not appear to dispute that Gomez exhausted his administrative remedies. **[CR Doc. 739 at 4-5]**. The Court is likewise satisfied that Gomez has fully exhausted his administrative rights.

### B. Extraordinary and compelling reasons

To begin, the Court acknowledges that non-retroactive changes[3] in the law can be extraordinary and compelling. *See United States v. Wesley*, 78 F.4th 1221, 1229 n.5 (10th Cir.

---

[3] In *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024), the Third Circuit held that USSG § 1B1.13(b)(6) may not be applied to allow consideration for compassionate release based on the change in sentencing law in 18 U.S.C. § 924(c) given Congress' declaration that Section 403 of the First Step Act does not apply retroactively in cases in which the sentence was imposed prior to adoption. But the Supreme Court granted *certiorari*. *See Rutherford v. United States*, No. 24-820, 2025 U.S. LEXIS 2209 (U.S. June 6, 2025). As it stands, the First, Fourth, Ninth, and Tenth Circuits allow sentencing courts to consider nonretroactive changes. The Third, Fifth, Sixth, Seventh, Eighth, and D.C. Circuits forbid such consideration.

Suffice it to say, what qualifies as "extraordinary and compelling" will expand—or narrow—within the next year. The specific question presented is "Whether a district court may consider disparities created

2023). But here, there has been no change in the law. Marijuana distribution is still illegal. As such, the Court does not find that purported changes in the legal landscape with respect to marijuana are extraordinary and compelling. Neither have numerous courts of appeals. *See, e.g., United States v. Rivera*, 2022 U.S. App. LEXIS 27160, at \*3–4 (3d Cir. Sept. 28, 2022) (unpublished and per curiam); *United States v. Tamez*, 2023 U.S. App. LEXIS 7732, at \*1 (5th Cir. Mar. 31, 2023) (unpublished and per curiam) ("[C]hanging attitudes toward marijuana did not amount to extraordinary and compelling reasons warranting early release."); *United States v. Simpson*, 2024 U.S. App. LEXIS 23165, at \*5 (6th Cir. Sept. 11, 2024) (unpublished); *United States v. McIntosh*, 2023 U.S. App. LEXIS 11706, at \*1 (7th Cir. May 12, 2023) (unpublished). Even so, a district court possesses latitude to ensure that sentences for drugs are not excessive. *Cf. Spears v. United States*, 555 U.S. 261, 264 (2009) (citing *Kimbrough v. United States*, 552 U.S. 85 (2007) (recognizing a court's authority to vary in crack cases based on policy disagreements and excessive sentences)).

The changing societal views regarding marijuana do not support a finding of extraordinary or compelling circumstances in this case and the sentence is not excessive, in part because it is a sentence not only for drugs, but also for numerous counts of money laundering.

### C. Applicable policy statements

Defendant Gomez bases his arguments on applicable policy statements.  The Sentencing Commission's policy statements do not support and, instead, lend further grounds for denial. The policy statement for compassionate release lists six circumstances that qualify as "extraordinary

---

by the First Step Act's prospective changes in sentencing law when deciding if 'extraordinary and compelling reasons' warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)."

Although not directly on-point in Gomez's case, if a court can consider upcoming changes in sentencing law under § 3582(c)(1), that provides support for the notion that compassionate release is a catch-all, of sorts, for the more specific § 3582(c)(2) provision.

and compelling reasons." *See* USSG §§ 1B1.13(b)(1)–(6). Relevant here are subparagraphs (b)(1), (b)(3), and (b)(6), listing the reasons for compassionate release as (1) family circumstances, (2) his health, (3) disparity in sentencing, and (4) rehabilitation.

### 1.  Unusually long sentence under USSG § 1B1.13(b)(6)

Defendant Gomez seeks a reduction of his 30-year sentence on the grounds that he received an unusually long and disproportionate sentence. **[CR Doc. 733 at 6-8]**. Defendant bases his argument on §1B1.13(b)(6) of the Sentencing Guidelines. Section 1B1.13(b)(6) states that a change in the law may be considered extraordinary or compelling:

> "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . ."

The sentence that Defendant is serving is 360 months (30 years), which was a downward departure from the life sentence that could have been imposed under the Guidelines in effect at the time of sentencing. **[CR Doc. 500]**. The record reflects that, if his sentence was imposed based on the current Sentencing Guidelines, the Guideline range still would be 360 months to life. **[CR Doc. 745 at 1-2]**. Therefore, no gross disparity exists between the sentence Gomez is serving and the sentence that would likely be imposed now, and the sentence does not present extraordinary and compelling reasons for a sentence reduction under §1B1.13(b)(6).[4]

---

[4] The parties debate the validity of §1B1.13(b)(6) and the case of *United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025) in their filings. **[CR Doc. 739 at 6-9; CR Doc. 742 at 3-6]**. However, in light of the fact that §1B1.13(b)(6)'s requirements are not met in this case, the Court need not decide the issue of the validity of §1B1.13(b)(6).

Defendant also argues that one of Gomez's many co-defendants, Charles Roybal, died in prison a few years after a life sentence was imposed and therefore, in fact served less time in prison than Gomez has.  **[CR Doc. 731 at 1-2]**.  However, as counsel likewise observes, Gomez received a more lenient sentence than Roybal, in part because of Gomez's acceptance of responsibility.  **[*Id.*; CR. Doc. 733 at 6–7].**  Roybal died in custody on February 27, 2006 — after Gomez was sentenced.  **[CR Doc. 538 at 1].**  Therefore, to the extent that counsel suggests that Roybal's death after only a few years in prison means that Roybal was given a shorter sentence that Gomez, that argument cannot seriously be considered for the simple reason that Roybal died after Gomez was sentenced.

### 2. Victimization under USSG §§ 1B1.13(b)(4)(A) & (B)

Next, Gomez claims that he was the victim of sexual abuse and physical abuse **[CR Doc. 733 at 37–43]**. If accurate and supported by the requisite evidence, these allegations fit into USSG § § 1B1.13(b)(4)(A) & (B).

Although Defendant Gomez argues the issue, the proof is lacking, here. Gomez provides his own Affidavit **[CR Doc. 742-1]** but does not support the Affidavit with any documentary records or evidence. The records submitted refer only to "alleged" sexual abuse. **[CR Doc. 733 at Exhibit P]**.   The policy statement says: "For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or finding in an administrative proceeding . . . ." USSG § 1B1.13(b)(4).

As the moving party, the Defendant bears the burden of establishing that he is eligible for a sentence reduction.  *United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green,* 764 F.3d 1352, 1356 (11th Cir. 2014). But there are no records to support relief. *See* **CR Doc. 733 at 38 n.33**. Defendant has provided no evidence of a conviction in a criminal case, a

finding or admission of liability in a civil case, or finding in an administrative proceeding, and the record does not support finding, that Gomez was a "victim of abuse."

### 3. Medical circumstances under USSG § 1B1.13(b)(1)(B)

Defendant Gomez contends that his medical condition supports granting of a sentence reduction.  He contends he suffers from cervical spine degeneration, chronic pai, migraines, severe neck pain, numbness in both arms, obesity, and difficulties breathing.  **[CR Doc. 733 at 43-44]**. However, Defendant provides only a letter from a nurse practitioner to support his claims and the record does not demonstrate that his physical ailments prevent him from working or rehabilitating in a prison environment. **[CR Doc. 733 at Exhibit L]**.  Moreover, the medical conditions he relies on are not the serious or terminal kinds of medical conditions contemplated by USSG § 1B1.13(b)(1)(B).

Gomez's medical circumstances do not rise to the level of extraordinary and compelling either. If combined with the purported reason for the "physical and medical conditions," *see infra* ¶ III.C.2, the Court thinks the policy statement's criteria may be met. But again, the Court determined that Gomez cannot establish victimization—as such, the Court also declines to find that his medical circumstances are extraordinary and compelling.

### 4. Rehabilitation under USSG § 1B1.13(d)

Rehabilitation alone isn't extraordinary and compelling. *Maumau*, 993 F.3d at 832 (quoting 28 U.S.C. § 994(t)); *see also* USSG § 1B1.13(d). Nevertheless, rehabilitation can be considered "in combination with other circumstances." *Wesley*, 78 F.4th at 1231 n.8.

Gomez maintains—and the United States does not dispute—that during the service of his sentence he: (1) earned his GED, (2) completed nearly fifty educational/vocational programs, and (3) now has "gainful employment." **[CR Doc. 733 at 44–45]**. Gomez also provided a detailed

release plan, *see* **CR Doc. 733-3 at 2–3**, which bolsters the weight of his rehabilitation. *Cf. United States v. Robinson*, 2023 U.S. App. LEXIS 22921, at *7 (Aug. 30, 2023) (unpublished) ("[R]ehabilitation plus the post-release plan conceivably might be enough . . . ." (citing *Maumau*, 933 F.3d at 832)).[5]

However, although admirable, completing educational and vocational programming alone, does not support Gomez's request.  Defendant Gomez's BOP disciplinary record, including the revocation of his release to a residential reentry center based on testing positive for an illegal substance, does not demonstrate rehabilitation in this case. *Maumau*, 993 F.3d at 832

### 5. Changes in the law under USSG § 1B1.13(c)

An amendment to the Guidelines Manual "that has not been made retroactive" shall not be considered when "determining whether an extraordinary and compelling reason exists." USSG § 1B1.13(c). That being said, if a defendant established "extraordinary and compelling reasons warrant a sentence reduction . . . a change in the law . . . may be considered." *Id.*

So even though a motion under § 3582(c)(2) is the appropriate vehicle for a sentence reduction based on retroactive Guideline changes, such changes can be "extraordinary and compelling" under § 3582(c)(1)(A). *See United States v. Craig*, No. 12-cr-20141, 2024 U.S. Dist. LEXIS 59435, at *7–8 (D. Kan. Apr. 1, 2024).

Back in 2014, the United States Sentencing Commission adopted Amendment 782 which lowered the recommended penalties for most drug crimes by reducing the base offense levels in USSG § 2D1.1 by two levels. Amendment 782 reduced the base offense level for offenses

---

[5] The Tenth Circuit is not alone in reasoning that a defendant's release plan can be combined with rehabilitation to establish extraordinary and compelling reasons. *See, e.g., United States v. Alicea*, 2023 U.S. App. LEXIS 14575, at *7–8 (3d Cir. June 12, 2023) (unpublished); *United States v. Pizer*, 2024 U.S. App. LEXIS 10060, at *3 (4th Cir. Apr. 25, 2024) (unpublished and per curiam); *United States v. Moore*, 2024 U.S. App. LEXIS 5010, at *3–4 (7th Cir. Mar. 1, 2024) (unpublished).

involving at least 10,000 but less than 30,000 kilograms of marijuana[6] from 36 to 34. The Commission made this Amendment retroactive.

The policy statement speaks in the negative—and essentially explains when changes in the law can't be considered. USSG §§ 1B1.13(b)(6) & (c). Generally speaking, a court cannot grant compassionate release: (1) solely for a change in the law, or (2) non-retroactive changes to the Guidelines. Gomez contends that the rescheduling of marijuana from a Schedule I to a Schedule III controlled substance is a change in the law that supports a reduction in his sentence. **[Doc. 748]**. However, an Executive Order is not a change in the law and does not alter his sentencing range. *See, e.g.*, *Chaidez v. United States,* 568 U.S. 342 (2013).

In all of the briefing that has been provided to the Court in this case, Defendant Gomez has never pointed to any actual change in the law, much less to a retroactive change, sufficient to support granting compassionate release. No change in the law supports any sentence reduction in this case.

### D. Sentencing factors under § 3553(a)

Even in "extraordinary and compelling" cases, the Court must consider the § 3553(a) factors to determine whether a sentence modification is warranted. *See* 18 U.S.C. § 3582(c)(1)(A) (citing § 3553(a)). Given this mandate, the Court now considers (1) the nature and circumstances of the offense; (2) Gomez's history and characteristics; (3) the sentence needed to reflect the seriousness of the offense, deter future criminal conduct, and protect the public from further crimes of the defendant; and (4) the need to avoid unwarranted sentence disparities.

---

[6] Although a very minor point, the drug quantity table spells the controlled substance as "marihuana."

14

The offense Gomez committed resulted in the distribution of more than 10,000 kilograms of marijuana **[CR Doc. 737 at ¶ 130]**. The money laundering charges are also serious because they further enabled Gomez's illegal drug trade.

Most concerning to the Court is the fact that Gomez possessed firearms, *see* **CR Doc. 487 at 7**; **CR Doc. 737 at ¶ 131**, and engaged in obstructive conduct. *See* **CR Doc. 487 at 8**; **CR Doc. 737 at ¶ 137**. No doubt, "obstructive criminal conduct as an organizer of marijuana-trafficking" has been determined to weigh against the granting of compassionate release. *United States v. Moreno*, 2025 U.S. App. LEXIS 18035, at *2 (5th Cir. July 21, 2025) (unpublished and per curiam). The Court concludes that consideration of the § 3553(a) factors does not warrant a sentence reduction in this case.

## IV. Potential Habeas Issue

Gomez also alleges that he is due "375 additional days" of credit for time served in "state prison on related [] marijuana offenses." **[CR Doc. 733 at 1, 8–10]**. This may be true, but this Court cannot award pre-sentence time. *See, e.g., United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Jenkins*, 38 F.3d 1143, 1144 (10th Cir. 1994); *Reed v. United States*, 262 F. App'x 114, 116 (10th Cir. 2008) (unpublished); *United States v. Sines*, 533 F. App'x 864, 865 (10th Cir. 2013) (unpublished). "Only the Attorney General through the Bureau of Prisons has the power to grant sentence credit in the first instance." *Jenkins*, 38 F.3d at 1144. Because there has been no § 3585(b) determination, the matter is not ripe for review—meaning this Court does not have jurisdiction to grant him sentence credit under § 2241, § 2255, or § 3582(c).

## CONCLUSION

At the time of sentencing, the Court varied downward from a life sentence based on its compassionate conclusion that life imprisonment would be unfair to Defendant Gomez. As such,

Gomez has already received a significant reduction in sentence. Gomez's record in this case does not establish any extraordinary or compelling reasons that would warrant a further reduction in sentence and a calculation of the sentencing range, even under the current Guidelines, still places his existing 30-year sentence at the bottom of the Guideline range. Therefore, the Court denies Defendant's Motion for a Sentence Reduction.

**IT IS THEREFORE ORDERED** that Gomez's Motion for a Reduction of Sentence **[CR Doc. 733]** is **DENIED**.

**IT IS FURTHER ORDERED** that Gomez's request to reduce his "five-year term of supervised release . . . to a term of one year" **[CR Doc. 733 at 1]** is **DENIED**. This decision may, of course, be reframed as a request for early termination after "the expiration of one year of supervised release." 18 U.S.C. § 3583(e)(1).

**LAST, IT IS ORDERED** that Defendant Gomez's Unopposed Motion to Stay **[CR Doc. 746]** is **DENIED** as moot.

**IT IS SO ORDERED.**

/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

16